Argued December 5, 1895; decided February 3, 1896.

BROWER LUMBER COMPANY v. MILLER.

[43 Pac. 659.]

CONTRACTS FOR THE BENEFIT OF THIRD PERSONS.—A provision in a bond of a street contractor to a city that the contractor will pay all money due and to become due for materials used and labor performed in completing his work, does not give to material men and laborers on the improvement any action against the contractor or his bondsmen, for the reason that the contract was made primarily and directly for the benefit of the city, rather than for their benefit, and because there was no fund or property provided in the hands of the promisor on which they could have any equitable claim: *Parker* v. *Jeffrey*, 26 Or. 186, and *Washburn* v. *Interstate Investment Company*, 26 Or. 436, approved and followed.

APPEAL from Multnomah: HARTWELL HURLEY, Judge.

This case is here on appeal from a judgment in proceedings against garnishees. On May fifth, eigh-

teen hundred and ninety-four, the Brower and Thompson Lumber Company commenced an action against Miller and Giddings, and recovered a judgment therein for three hundred and twenty-eight dollars and fifty-nine cents. When the action was commenced a writ of attachment was issued, and Hamilton and Howard were served with garnishee process, to which they first made answer that they were indebted to Miller and Giddings in the sum of two hundred and forty-nine dollars and eighty cents, but afterwards amended their certificate so as to show an indebtedness of sixty-two cents only. The amended certificate being unsatisfactory, the plaintiff had Hamilton and Howard cited to appear before the court, and their answers to the allegations and interrogatories served upon them disclose the status of their indebtedness which it was sought to reach by the garnishment. We state the facts out of which the indebtedness arose from the garnishees' standpoint, as their sufficiency is tested by exceptions which form the basis of the judgment appealed from. It seem that one J. D. Wickliff, having entered into a contract with the City of Portland to make certain street improvements, and to furnish the labor and materials therefor, executed to the city a bond with B. S. Reilly and George W. Bower as sureties, conditioned that he should well and faithfully perform all the stipulations of the contract. On the same day Wickliff, for the consideration of five dollars, assigned the contract to Hamilton and Howard. Concerning these transactions it is alleged: "That although said bond appears to have been given by J. D. Wickliff, said contract had in fact already been assigned to these garnishees; they had succeeded to all the rights and privileges of said Wickliff under said contract, and had assumed all the liabilities and responsibilities there

under; that said B. S. Reilly and George W. Bower signed said bond as sureties for these garnishees, and not for said Wickliff"; * * * that at the time said contract was assigned "it was understood and agreed by and between the parties to said assignment that these garnishees shall stand in all respects as the original contractors for said street improvement; that said Wickliff should have no further interest in said contract; that he should be relieved of all liability thereunder; and that all rights and claims thereunder should accrue to these garnishees; and that these garnishees should be responsible for all liabilities or responsibilities arising thereunder." The contract contains the stipulation required by the ordinances of the City of Portland as follows: "That said party of the first part (Wickliff) shall, within ninety days after completion of the work herein agreed to be performed, pay all sums of money due at the completion of said work, or thereafter to become due for materials used in and labor performed on or in connection with said work." Hamilton and Howard let to Miller and Giddings a subcontract for furnishing the nails and labor requisite for carrying out said contract with the city, one half the contract price to be paid in cash, and the other half in city warrants. Miller and Giddings furnished nails and labor of the value of nine hundred eighty-eight dollars and sixty-four cents, all which Hamilton and Howard paid except two hundred and forty-nine and eighty cents. S. D. Powell furnished nails of the value of one hundred and fourteen dollars and eighty cents, at the request of Miller and Giddings, for use in the completion of said contract; Henry Aschenbrenner, John Kruger, and Fred Hyde performed labor for them, for which they claimed fifty-one dollars and forty-six cents, seven dollars and

ninety-nine cents, and thirty-four dollars and three cents, respectively, and each of said individuals made demand of Hamilton and Howard for the amount due him for such nails and labor, and claims a right to recover against them directly under and by virtue of the original contract with the City of. Portland. Under this state of facts the garnishees claimed that they were responsible to these several individuals in the various sums demanded, and not to Miller and Giddings. The court dismissed the proceeding, and rendered judgment against plaintiffs for costs, from which it appeals.                        Reversed.

For appellant there was a brief and an oral argument by *Mr. Ralph R. Duniway.*

For respondent there was a brief and an oral argument by *Mr. Gustavus C. Moser.*

Opinion by Mr. Justice Wolverton.

We presume that if Powell, Aschenbrenner, Kruger, and Hyde each has an action directly against the garnishees upon their several demands, the fact that such rights of action exist would constitute a good defense to an action by Miller and Giddings against the garnishees; and if good against Miller and Giddings, it would also constitute a sufficient defense under the garnishee process. It is intimated, but not strongly insisted upon, that Wickliff's bond to the city forms a sufficient basis upon which actions by Powell and others against the garnishees may be founded, but this cannot be so, for two reasons, *first,* Hamilton and Howard are not parties to the bond, and an action based thereon could not go against them; and, *second,* it is settled by *Parker* v. *Jeffery,* 26 Or. 186, (37 Pac.

712,) that they have no action upon the bond even as against Wickliff. In that case, which was an action upon a similar bond given in pursuance of the same ordinances, a party had furnished materials directly to the contractor, and it was held that the bond furnished him no remedy. It is stoutly contended, however, that Hamilton and Howard's liability to Powell and others is established by the clause in the contract wherein it is "further stipulated and agreed on behalf of the party of the first part, that said party of the first part shall, within ninety days after the completion of the work herein agreed to be performed, pay all sums of money due at the completion of said work, or thereafter to become due for materials used in and labor performed on or in connection with said work," upon the doctrine, as asserted generally by some of the authorities, that where a party makes a promise to another for the benefit of a third, the latter may maintain an action upon it, though the consideration did not move from him. Before reaching this question there is another which is involved in some doubt, and that is whether Hamilton and Howard occupy the same position under the contract, with reference to these parties, as Wickliff; but we will pass the latter, and assume that Hamilton and Howard are liable in all respects under the contrct as if they were the original contractors.

It may be premised that the City of Portland was not directly liable to Powell or the other parties asserting demands against the garnishees at the time the contract was entered into, so that the consideration to be paid for the performance of its conditions does not in any way constitute a trust fund in the hands of the contractors for the payment of its obligations; nor can it be said that the contractors have,

for a consideration, undertaken to pay the obligations of the city. By the very strong current of recent authority the doctrine contended for by counsel has been much limited and qualified, and, as was said by Mr. Justice Brown, in *Constable* v. *National Steamship Company,* 154 U. S. 73, (14 Sup. Ct. 1062,) "It is by no means a universal rule that a person may sue upon a contract made for his benefit, to which he was not a party." In *Jefferson* v. *Asch,* 53 Minn. 446, (25 L. R. A. 257, 55 N. W. 604,) a recent and well considered case from Minnesota, to which is added an exhaustive annotation of the authorities by the authors of that excellent series of reports, the Lawyer's Reports Annotated, Chief Justice Gilfillan, in tracing and discussing the limitations to the rule as generally stated, makes the following deductions from the New York authorities, to which he gives his sanction as correct in principle: "To give a third party who may derive a benefit from the performance of the promise an action, there must be—*first,* an intent by the promisee to secure some benefit to the third party; and, *second,* some privity between the two,—the promisee and party to be benefited,—and some obligation or duty owing from the former to the latter, which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from him personally." "There must be either a new consideration, or some prior right or claim against one of the contracting parties, by which he has a legal interest in the performance of the agreement"; and "there must be some legal right, founded upon some obligation of the promisee, in the third party, to adopt and claim the promise as made for his benefit." Like deductions are made from the Massachusetts authorities. From these a further and a more direct and explicit deduc-

tion is discernible, being that which finds support in trust relations, which relations give rise to an implied promise. Such is the result of an investigation of the subject by BEAN, C. J., in *Parker* v. *Jeffery*, 26 Or. 186 (37 Pac. 712). He says: "In nearly if not quite every case coming under our notice in which the action has been sustained, unless on a bond or obligation authorized by law, there has been some property, fund, debt, or thing in the hands of the promisor upon which the plaintiff had some equitable claim, and from which the law, acting upon the relationship of the parties, or the fund, established the privity, implied the promise, and created the duty upon which the action was founded." This deduction is reinforced by the principle established by *Washburn* v. *Interstate Investment Company*, 26 Or. 436, (36 Pac. 533, 38 Pac. 620,) that where the principal contract is executory in its nature, and there is no fund in the hands of the promisor, or debt or obligation due from him, and he has simply obligated himself to pay the debts of another to a third party, who is neither a party to the contract or consideration, no action will lie in favor of such third party against the promisor. For additional authorities bearing upon the question not cited in the two authorities last referred to see *Constable* v. *National Steamship Company*, 154 U. S. 73 (14 Sup. Ct. 1062); *Burton* v. *Larkin*, 36 Kan. 246 (13 Pac. 598); *Anderson* v. *Fitzgerald*, 21 Fed. 294; *Weller* v. *Goble*, 66 Iowa, 113 (23 N. W. 290); *Durnherr* v. *Rau*, 135 N. Y. 219 (32 N. E. 49); *Parlin* v. *Hall*, 2 N. D. 473 (52 N. W. 405); *Morrill* v. *Lane*, 136 Mass. 93.

Now do Hamilton and Howard bring themselves within the purview of the rule thus limited and circumscribed, and show themselves obligated in an actionable capacity to Powell, Aschenbrenner, and oth-

ers? We do not think they do. An effort has been
made to distinguish *Parker* v. *Jeffery* from the case
made by the facts herein stated, but we think the
principle established is alike applicable to the one case
as to the other. The contract with the city is execu-
tory in its nature, and it contemplates that the consid-
eration for the intended improvements shall be paid
directly to the contractors when the work is com-
pleted, without limitations as to its use by them.
To be sure, they stipulated with the city that they
would within ninety days pay all sums of money due
at the completion of the work, or thereafter to become
due, for materials used and labor performed in con-
nection therewith, which is a wholesome and salutary
provision, required by ordinance, and which inures in-
cidentally and indirectly to the benefit of the material-
men and laborers; yet it would seem the primary ob-
ject of the stipulation was for the benefit of the city,
as it has exacted a bond in its individual capacity to
insure its faithful performance, together with other
conditions of the contract. Counsel for respondents
invokes in aid of his contention the case of *City of St.
Paul* v. *Butler,* 30 Minn. 459, (16 N. W. 362,) but the case
does not help him. In reality it is an authority the
other way. The contract therein stated provided that
the contractor should "pay all just claims for all labor
performed or materials furnished for or on account of
said contract as aforesaid," but the bond entered into
to secure its faithful performance was given to the
city "for the use of all persons who may do work or
furnish materials" in pursuance of its provisions. The
court expressly held that neither the laborers nor ma-
terial men had any claim against the contractors by
reason of the contract, but decided that the bond gave
the action upon the like principle as actions are given

under our statute upon official statutory bonds to the
party sustaining an injury. See sections 340 and 341,
Hill's Code of Oregon; *Crook County* v. *Bushnell*, 15 Or.
169 (13 Pac. 886), and *Hume* v. *Kelly*, 28 Or. 398 (43 Pac.
380). So we conclude that the contractors (the gar-
nishees herein) have incurred no greater liability in
this respect under the contract than they have or
would have incurred under the bond had they executed
it instead of Wickliff, the effect of which liability upon
the bond was declared in *Parker* v. *Jeffery,* and the doc-
trine there enunciated and settled applies with like
vitality and cogency here. It follows from these con-
siderations that the judgment of the court below
should be reversed, and remanded with directions to
enter judgment in favor of plaintiff and against the
garnishees for the sum of two hundred and forty-nine
dollars and eighty cents, and it is so ordered.

REVERSED.